CONNECTICUT BANK AND TRUST COMPANY *v.* PAMELA
WILCOX ET AL.
(12757)

PETERS, C. J., HEALEY, CALLAHAN, CELOTTO and STOUGHTON, Js.

Argued November 4—decision released December 16, 1986

*David S. Grossman,* for the appellants (defendants).

*Jackson T. King, Jr.,* with whom, on the brief, was *Mary E. Holzworth,* for the appellee (plaintiff).

PETERS, C. J. The principal question on this appeal, in a case involving the loss of a letter of guaranty, is whether the Appellate Court correctly determined that the issues concerning the enforceability of the guaranty raised only factual matters that did not warrant extended appellate consideration. The plaintiff, the Connecticut Bank and Trust Company, brought an action against the defendants, Pamela Wilcox and Annelaine L. Lotreck, alleging that they were liable as guarantors of debts incurred by the Wilcox Pallet Company. The trial court found the issues for the plaintiff and rendered judgment holding the defendants liable. The defendants appealed to the Appellate Court which, in a per curiam decision, found no error. After their petition for certification was granted, the defendants appealed to this court. We affirm the judgment of the Appellate Court.

The trial court made the following findings of fact. On September 9, 1980, the defendants, the officers of the Wilcox Pallet Company, executed a letter of guaranty under which they guaranteed the payment of any and all amounts "due or to become due, now existing or hereafter arising" out of the liabilities of the corporation to the plaintiff. The defendants submitted their personal financial statements to the plaintiff in the spring of 1981. Thereafter, in April and November of 1981, the corporation executed three promissory notes manifesting its indebtedness to the plaintiff in the total amount of $88,650. These loans were part of a line of

credit extended by the plaintiff to the corporation; the line of credit had been expressly conditioned upon "the continued maintenance of a sound financial condition on the parts of both the company and the guarantors." Employees of the plaintiff saw the defendants' letter of guaranty on two different occasions: in April, 1981, and in September, 1981. Subsequently, however, when the plaintiff learned, in December, 1981, that the corporation was having financial difficulties, the plaintiff sought the letter of guaranty, but could not locate it. The plaintiff conducted a diligent and extensive search for the letter of guaranty, but was unable to find it.

On the basis of these findings of fact, the trial court concluded that the defendants were liable as guarantors for the debts incurred by the corporation to the plaintiff. The court determined that the plaintiff had made no misrepresentations to the defendants at the time of the execution of the line of credit. It held that the guaranty was valid and binding despite a delay of several months between the execution of the letter of guaranty and the execution of the line of credit. It determined that the plaintiff had relied upon the continued liability of the defendants, evidenced by the letter of guaranty, when the plaintiff made and renewed loans to the corporation. The court therefore rendered judgment against the defendants in the amount of $103,328.82, representing principal and interest on the notes, together with legal interest thereon from February 1, 1983, and attorney's fees of $7500.

The Appellate Court summarily upheld the judgment of the trial court. *Connecticut Bank & Trust Co.* v. *Wilcox*, 3 Conn. App. 510, 490 A.2d 95 (1985). That court found no error in the trial court's ruling permitting the plaintiff belatedly to amend its complaint; id.; an issue that the defendants have chosen not to pursue further. The Appellate Court held that "the remain-

ing claims of error" raised nothing further than "conclusions of fact" and thus did not warrant plenary review. Id., 510–11.

This court thereupon granted the defendants' petition for certification, which alleged the existence of two questions of substance warranting a further appeal to this court. The petition for certification described the questions as: (1) the reasonableness and diligence of the search of a lost document required to be in writing under the statute of frauds; and (2) the availability of a defense of estoppel to prevent enforcement of a guaranty which allegedly lacks consideration. We will consider each of these questions separately.

This court has not, for many years, considered the quantum of proof that is required when secondary evidence is produced to establish the contents of a document that has been accidentally lost or destroyed. The cases and the commentaries are, however, in substantial agreement that a party must undertake a twofold burden in order to recover on a document that he cannot produce. Such a party must demonstrate both (a) the former existence and the present unavailability of the missing document, and (b) the contents of the missing document. *Woicicky* v. *Anderson,* 95 Conn. 534, 536, 111 A. 896 (1920); *Kelsey* v. *Hanmer,* 18 Conn. 311, 317 (1847); *Witter* v. *Latham,* 12 Conn. 392, 399 (1837); C. McCormick, Evidence (3d Ed. 1984) § 53, pp. 138–39. The legislature has adopted a similar policy with regard to an action to enforce a negotiable instrument that is lost by "destruction, theft or otherwise." General Statutes § 42a-3-804;[1] see J. White & R. Sum-

---

[1] "[General Statutes] Sec. 42a-3-804. LOST, DESTROYED OR STOLEN INSTRUMENTS. The owner of an instrument which is lost, whether by destruction, theft or otherwise, may maintain an action in his own name and recover from any party liable thereon upon due proof of his ownership, the facts which prevent his production of the instrument and its terms. The court may require security indemnifying the defendant against loss by reason of further claims on the instrument."

mers, Uniform Commercial Code (2d Ed. 1980) § 13-22. At least in a trial to the court, there is no particular sequence in which the party relying on a lost document must present evidence to satisfy his twofold burden. See *Fitch* v. *Bogue,* 19 Conn. 285, 290–91 (1848).[2] Finally, there is no automatic enhancement of that burden of proof merely because, under the applicable provisions of the statute of frauds; General Statutes § 52-550;[3] the contract in question was required to be memorialized in a written memorandum. Section 137 of the Restatement (Second) of Contracts (1981) expressly provides: "The loss or destruction of a memorandum does not deprive it of effect under the Statute [of Frauds]." See also *Computer Servicenters, Inc.* v. *Beacon Mfg. Co.,* 328 F. Sup. 653, 655 (D.S.C. 1970), aff'd, 443 F.2d 906 (4th Cir. 1971); *Alvin Epstein Advertising* v. *Helfer,* 138 A.2d 925, 927 (D.C. 1958); *Mossman* v. *Hawaiian Trust Co.,* 45 Hawaii 1, 9–10, 361 P.2d 374 (1961); *Capital Bank & Trust Co.* v. *Richman,* 19 Mass. App. 515, 519–22, 475 N.E.2d 1236 (1985);

---

[2] In a jury trial, the rule appears to be that the judge should decide, as a preliminary matter, whether the original written document was lost, but that the jury should then decide whether the document ever existed. *Woicicky* v. *Anderson,* 95 Conn. 534, 536, 111 A. 896 (1920); C. McCormick, Evidence (3d Ed. 1984) § 53, pp. 138–39, and cases cited therein.

[3] "[General Statutes] Sec. 52-550. STATUTE OF FRAUDS; WRITTEN AGREEMENT OR MEMORANDUM. (a) No civil action may be maintained in the following cases unless the agreement, or a memorandum of the agreement, is made in writing and signed by the party, or the agent of the party, to be charged: (1) Upon any agreement to charge any executor or administrator, upon a special promise to answer damages out of his own property; (2) against any person upon any special promise to answer for the debt, default or miscarriage of another; (3) upon any agreement made upon consideration of marriage; (4) upon any agreement for the sale of real property or any interest in or concerning real property; or (5) upon any agreement that is not to be performed within one year from the making thereof.

"(b) This section shall not apply to parol agreements for hiring or leasing real property, or any interest therein, for one year or less, in pursuance of which the leased premises have been or are actually occupied by the lessee, or any person claiming under him, during any part of the term."

*Aesoph* v. *Golden,* 367 N.W.2d 639, 642 (Minn. App. 1985); *Chakur* v. *Zena,* 233 S.W.2d 200, 202 (Tex. Civ. App. 1950); 2 A. Corbin, Contracts (1950 & Sup. 1971) § 529; 4 S. Williston, Contracts (3d Ed. Jaeger 1961) § 579A. In any dispute concerning the existence, loss or terms of a missing document, it is appropriate for the parties to bring to the court's attention whatever evidence, direct or circumstantial, written or oral, the trial court may find relevant and persuasive.

We agree with the conclusion of the Appellate Court that the application of these principles to the particular circumstances of this case involved nothing more than the resolution of disputed questions of fact. The trial court made a finding of fact when it determined that the plaintiff had met its burden of proving that the guaranty had been lost and, despite the plaintiff's diligent search, could not be produced at trial. The trial court similarly made a finding of fact when it held that the terms of the missing guaranty were identical to those contained in the plaintiff's standard form for a letter of guaranty, that form having been admitted as an exhibit at trial.

The defendants' alternate claim of Appellate Court error argues that the guaranty was unenforceable as a matter of law because of an alleged absence of consideration. This argument apparently hinges upon the fact that there was an interval of several months between the execution of the guaranty and the execution of the corporate notes whose payment the defendants are alleged to have guaranteed. As a matter of law, this argument is untenable. A continuing guaranty is enforceable, for those transactions within its contemplation, if the creditor makes subsequent advances by reason of the outstanding guaranty. Both our case law and the modern law of contract eschew any requirement of contemporaneity between a continuing guaranty and the obligations secured thereby. *Superior*

*Wire & Paper Products, Ltd.* v. *Talcott Tool & Machine, Inc.,* 184 Conn. 10, 20–21, 441 A.2d 43 (1981); 1 Restatement (Second), Contracts § 88 (c) (1981); see also *Chevron Chemical Co.* v. *Mecham,* 536 F. Sup. 1036, 1042 (C.D. Utah 1982); *Gintzler* v. *Melnick,* 116 N.H. 566, 568, 364 A.2d 637 (1976). Whether the parties contemplated that the continuing guaranty in this case was to cover the notes that were made by the corporate debtor is a matter of interpretation of the letter of guaranty that "is principally a question of the intention of the contracting parties, a question of fact to be determined by the trier of facts." *Monroe Ready Mix Concrete, Inc.* v. *Westcor Development Corporation,* 183 Conn. 348, 351, 439 A.2d 362 (1981). The Appellate Court was therefore correct that the enforceability of the guaranty in this appeal turned on findings of fact by the trial court.

Neither of the defendants' remaining claims of error warrants extended discussion. Their defense of mistake raises an issue that this court need not consider because this defense was proffered neither in the defendants' appeal to the Appellate Court nor in their petition for certification. See Practice Book §§ 4130 (formerly § 3140), 4138 (formerly § 3154);[4] *State* v. *Torrence,* 196 Conn. 430, 433, 493 A.2d 865 (1985). Their defense of estoppel depends on factual assertions that are contrary to the findings of the trial court. Because the existence

---

[4] Practice Book § 4130 (a) (1) provides: "——FORM OF PETITION AND CROSS PETITION.

"(a) A petition or cross petition for certification shall contain the following sections in the order indicated here:

"(1) A statement of the questions presented for review, expressed in the terms and circumstances of the case but without unnecessary detail. The supreme court will ordinarily consider only those questions squarely raised, subject to any limitation in the order granting certification."

"[Practice Book] Sec. 4139. ——APPEALS DEEMED PENDING . . . . The issues which the appellant may present are limited to those raised in the petition for certification or in the request by the appellate panel, except where the issues are further limited by the order granting certification."

of an estoppel is primarily a factual question; *New York Annual Conference* v. *Fisher,* 182 Conn. 272, 300, 438 A.2d 62 (1980); we decline, as did the Appellate Court, to retry this issue on appeal.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.